OPINION OF THE COURT
Edward J. Greenfield, J.
When a person is charged with making bigoted and discriminatory remarks, can she counter by claiming it is she who is the victim of discrimination and can the complainants assert that their reports were privileged? That is the issue in this case.
Plaintiff, Cecile Herlihy, age 72, has been employed by defendant Metropolitan Museum of Art for 20 years, the last 11 as coordinator of membership volunteers, until she was discharged after complaints that she had made anti-Semitic remarks to defendants, volunteers at the Museum, Ruth Zalinka, Sandra Ortner and Judith Strone, who were supervised by plaintiff.
Plaintiff’s complaint sets forth causes of action for discriminatory discharge, slander, tortious interference with prospective business relations and intentional infliction of emotional distress. She alleges that Zalinka and Ortner in July 1991 and Strone on August 1991 advised Museum officials, including the Museum’s Human Resources Office, that plaintiff had made anti-Semitic remarks at different times in the presence of each of them.
Plaintiff alleges the volunteers reported that she said to them: "You Jews are such liars,” "You Jews are all alike” and, referring to the Jewish volunteers, "f_king whores”, "liars” and "undependable.”
Plaintiff denies making such remarks, claims the complaints of the volunteers were knowingly false and made with malice, and says she had merely been attempting to ascertain on which dates in September 1991 the Jewish New Year would be celebrated in order to determine the feasibility of temporary work schedule changes requested by Zalinka and Ortner.
Plaintiff contends that the three volunteers were acting in retaliation for her exercise of authority over their work sched *282 ules and because she had previously given them certain reprimands regarding their respective work performances.
Plaintiff also alleges that Museum officials, while investigating the charges, ignored her denials and directed her to apologize, causing her emotional distress.
On September 11, 1991, the Museum suspended plaintiff pending the conclusion of its investigation. Plaintiff alleges that during the investigation, Barbara Dougherty, the Museum’s manager of membership, asked her whether her job was "getting to be too much” for her.
Plaintiff was discharged soon thereafter. Plaintiff, 72 years old, alleges her duties were assigned to younger and less experienced individuals, and she claims she has been discriminated against.
Plaintiff seeks, inter alia, lost wages and benefits, punitive damages and litigation expenses, including reasonable attorneys’ fees.
Defendants now move for dismissal of the complaint or summary judgment on all of plaintiff’s claims against Zalinka, Ortner and Strone and on the claim of intentional infliction of emotional distress against the Museum, asserting that those claims are deficient as a matter of law and are controverted by the undisputed facts.
The court, in its discretion, will treat the instant motion as one for summary judgment (see, CPLR 3211 [c]), since both sides have submitted extensive affidavits, have laid bare their proof and have deliberately charted a summary judgment course (Four Seasons Hotels v Vinnik, 127 AD2d 310).
Defendants contend that all the tort claims against the volunteers must be dismissed because their reports of discriminatory and anti-Semitic comments by plaintiff which launched the Museum’s investigation into those reports are protected and privileged under Federal, State and local laws and State common law which protect their right to be free from retaliation for lodging a complaint of discrimination. Plaintiff, in opposition, claims that since she never made the remarks imputed to her, the statements by the volunteers were knowingly false and were made and given with malicious intent in order to harm plaintiff because of the reprimands she had previously given to each of the three volunteers. Defendants rely on the shield against liability provided both by statutory and by common law.
*283 THE STATUTORY SHIELD
Federal, State and local laws prohibit discrimination on the basis of race or religion in the workplace and places of public accommodation. (42 USC §§ 1981, 2000a [tit II]; § 2000e-2 [a] [tit VII]; Executive Law § 296 [2] [a]; Civil Rights Law § 40; Administrative Code of City of NY § 8-101 et seq.) The antidiscrimination law protects the right of an individual to oppose discrimination in the workplace and to lodge a complaint of discrimination with an employer or administrative agency without risk of retaliatory measures. (42 USC §§ 2000a-2, 2000e-3 [a]; Executive Law § 296 [7]; Administrative Code § 8-107 [7].)
There is no question but that the use of racial or religious slurs and derogatory characterizations about an entire ethnic, racial or religious group are bigoted and hurtful, and that the employer may be held responsible for discrimination if it condones or acquiesces in discriminatory language uttered by an employee out of personal pique. (Matter of Totem Taxi v New York State Human Rights Appeal Bd., 65 NY2d 300.)
It is the contention of the individual defendants that these statutes afford complete protection to the individual who lodges a complaint of discriminatory words or conduct in the workplace, since they prohibit retaliation, and plaintiff is suing them only because they lodged complaints. (42 USC §§ 2000a-2, 2000e-3 [a]; Executive Law § 296 [9]; Administrative Code § 8-107 [7].) They argue that the statutes provide an absolute shield to them against subsequent suits for defamation even if their complaints were unfounded, malicious, false and defamatory.
Certainly it is true that an employer is guilty of unlawful conduct if it discharges, expels or otherwise discriminates against a person who has opposed forbidden discriminatory practices. (Executive Law § 296 [1] [e]; [3] [c]; Matter of New York State Off. of Mental Retardation & Dev. Disabilities [Staten Is. Dev. Ctr.] v New York State Div. of Human Rights, 164 AD2d 208; Western Union Intl. v City of New York, Commn. on Human Rights, 128 Misc 2d 217, affd, 120 AD2d 996; Matter of Avis-High Bennett Rent-A-Car v State Human Rights Appeal Bd., 40 AD2d 992; Bethlehem Steel Corp. v New York State Div. of Human Rights, 36 AD2d 898.) The question is whether an individual who brings a suit for defamation alleging he or she was falsely charged is barred as a matter of law from maintaining such a suit because it is "retaliatory.”
There is only one case in New York State cited for such a *284 proposition, Moran v Simpson (80 Misc 2d 437 [Sup Ct, Livingston County 1974]). The court there dismissed a complaint for libel and malicious prosecution premised on charges made by the defendant to the State Division of Human Rights which found no probable cause. It summarily concluded, "[s]ince the plaintiffs lawsuit is bottomed on an act pronounced to be wrong by statute, it cannot survive the defendant’s motion for dismissal.” (Supra, at 438.) Defendants also cite Equal Empl. Opportunity Commn. v Virginia Carolina Veneer Corp. (495 F Supp 775, 778), where it was stated that the Federal courts have found "an absolute privilege against defamation or other torts resulting from exercising a right granted by federal law like the filing of a charge of discrimination.”
The New York Court of Appeals has, however, rejected the notion of an absolute bar against retaliation for an unfounded complaint of discriminatory practices. (Matter of Mohawk Finishing Prods. v State Div. of Human Rights, 57 NY2d 892.) The complainant must at least have a reasonable belief as to the existence of the discrimination before being accorded a shield against retaliation. (Matter of New York State Off. of Mental Retardation & Dev. Disabilities [Staten Is. Dev. Ctr.] v New York State Div. of Human Rights, supra, at 210.)
The cases cited by defendants for the proposition that even those who make malicious and defamatory discrimination complaints are protected against retaliation do not in fact go that far. Proulx v Citibank (659 F Supp 972 [SD NY 1987], affd 862 F2d 304) holds that while an employee charging discrimination is protected against firing, a subsequent suit can still be brought by the person wrongly charged against an employee for defamation for making a malicious discrimination claim. (Supra, at 978-979.) Similarly, in Pettway v American Cast Iron Pipe Co. (411 F2d 998, 1007, n 22), the court declared that while an employer is barred from the retributive discharge of a complainant, "[w]e in no way imply that an employer is preempted * * * from vindicating his reputation through resort to a civil action for malicious defamation.” As the United States Supreme Court has declared, "malicious libel enjoys no constitutional protection in any context * * * The malicious utterance of defamatory statements in any form cannot be condoned” (Linn v Plant Guard Workers, 383 US 53, 63).
Executive Law § 296 (7) and Administrative Code § 8-107 (7) do not bar all retaliatory action in any event, but limits their protections to those who have filed a complaint or participated *285 in a proceeding, or who have "opposed any practices forbidden under this article” — i.e., discriminatory hiring or discharge, use of public accommodations, rental or sale of residential or commercial space, etc. It does not appear that there ever was a formal complaint or proceeding here (although Sumner v United States Postal Serv. [899 F2d 203, 208] suggests that informal complaints to management are covered by the United States Civil Rights Act), nor does it appear that anyone opposed any forbidden practices. Rather, this was a case of alleged distasteful and obnoxious speech. The charge that in an employment context one has indulged in racist or anti-Semitic speech can appropriately give rise to a counter-charge that the accusation is baseless and malicious.
There is no absolute statutory privilege or blanket absolution. The claim that there would be a chilling effect on the making of discrimination complaints unless they were absolutely privileged, and the complainants given immunity under all circumstances must yield to accommodate the right to counter-charge that such complaints are outrageous, defamatory, or extorsive. Such conflicts are best resolved not by a gag-rule, but in the ultimate forum for the ascertainment of truth — the trial.
THE COMMON-LAW SHIELD
While statements made in judicial, quasi-judicial, or administrative proceedings are cloaked with an absolute privilege, and cannot be the basis for a subsequent claim of defamation (Missick v Big V Supermarkets, 115 AD2d 808), a different rule ordinarily applies to statements which are no part of a formal proceeding, but are made during the course of internal investigation or pursuant to inquiry — the rule of qualified privilege. (Toker v Pollak, 44 NY2d 211.) The qualified privilege arises "when a person makes a bona fide communication upon a subject in which [the person] has an interest or a legal, moral or social duty to speak and the communication is made to a person having a corresponding interest or duty.” (Santavicca v City of Yonkers, 132 AD2d 656, 657, citing Byam v Collins, 111 NY 143, 150.) It is clear that the individual defendants, as volunteers, were required by the Museum’s manual "to discuss any problems or difficulties which arise.”
Thus, communications made during the course of an investigation into sexual harassment or other improprieties are protected by the qualified privilege. (Missick v Big V Super *286 markets, supra, at 811; Stockley v AT & T Information Sys., 687 F Supp 764, 769.) The qualification, of course, is that the challenged statement be made in good faith, and not be actuated by actual malice. (Stukuls v State of New York, 42 NY2d 272, 279.) By actual malice is meant personal spite or ill will or culpable recklessness or negligence. (Shapiro v Health Ins. Plan, 7 NY2d 56, 60-61, citing Hoeppner v Dunkirk Print. Co., 254 NY 95, 106.)
Defendants contend that the defamation causes of action in the complaint must be dismissed because of a failure to allege any facts from which malice can be inferred. While plaintiff has alleged that the statements made by the volunteers attributing anti-Semitic statements to her were totally false, defendants assert that falsity alone is not sufficient for an inference of malice. (Stukuls v State of New York, supra, at 279; McGovern v Hayes, 135 AD2d 125, 128; Garson v Hendlin, 141 AD2d 55, 64, lv denied 74 NY2d 603.)
In each of those cases however, the defamatory material was set forth as a matter of opinion or judgment, so that to establish actual malice the plaintiff had to do more than to show the opinion or judgment was without basis. Here, however, defendants are charged with a flat assertion of facts — not their opinion that plaintiff’s actions led them to believe that she was anti-Semitic, but that the plaintiff had uttered objectionable anti-Semitic remarks in their presence, disparaging the honesty and integrity of Jews as a class. Plaintiff has emphatically denied ever making such statements, attributing the reports of the individual defendants to resentment over her supervisory actions.
There is no doubt that in these days of heightened sensitivity, being unjustly labeled as a blatant anti-Semite is just as repulsive as calling someone "a dirty Jew.” The charge brings forth the aversion, scorn and loathing of the decent people of the community. As recently observed by the Superior Court of New Jersey, "under contemporary standards, the accusation of hating Jews is at least as much of an assault upon reputation as statements that charge commission of a crime, impute a loathsome disease, affect a person in his business, trade, profession or office or impute unchastity to a woman.” (Ward v Zelikovsky, 263 NJ Super 497, 512, 623 A2d 285.) If a person claims to have witnessed the making of outrageously antiSemitic statements knowing the charge not to be true, the only conclusion that can be drawn is that the false statements and attributions of bigotry were designed to cause injury out *287 of deliberate personal pique. Unlike Kadish v Dressner (86 AD2d 622), where a charge that plaintiff was "uncooperative” was held to raise no issue of malice, in instances where the speaker is charged with having to know that the claims of illegal, dishonest or unethical conduct are totally false, the issue of inherent malice must go to a jury. (Vasquez v O’Brien, 85 AD2d 791, 792.)
Known falsity may indeed be equated with malice. (Proulx v Citibank, 659 F Supp 972, 975, supra.) No one has a license to injure another intentionally by circulating defamatory or insulting material known to be false. (Linn v Plant Guard Workers, 383 US 53, 61, supra; O’Rorke v Carpenter, 55 NY2d 798.) An allegation of a known defamatory falsehood may of itself serve to establish malice where that is required for recovery. (Milkovich v Lorain Journal Co., 497 US 1, 20, n 7.) "Unlike a subjective assertion the averred defamatory language is an articulation of an objectively verifiable event.” (Milkovich v Lorain Journal Co., supra, at 22, citing Scott v News-Herald, 25 Ohio St 3d 243, 252, 496 NE2d 699, 707.) "It is true that a communication may be so extravagant in its denunciations or so vituperative in its character as to justify an inference of malice * * * Doubtless also the plaintiff might establish malice by proving that the defendant knew the falsity of the statements made by him.” (Ashcroft v Hammond, 197 NY 488, 496.)
If the statements alleged to have been made by defendants were misquotations which were knowingly false, they could have had no other purpose than to cause harm. Defendant Strone denies making the remarks — raising a question of fact. Plaintiff ascribes a motive to defendants — a desire to retaliate arising out of bad feelings and dislike as a result of prior criticism. How else can plaintiff disprove statements which if unrebutted will certainly cause harm? If false, as alleged, malice and ill will presumably were intended. When one asserts and the other denies, plaintiff must be allowed to attempt to prove falsity and malice to the satisfaction of a jury.
OTHER TORT CLAIMS
That branch of the fifth cause of action which alleges that the Museum intentionally caused plaintiff to suffer emotional distress during the course of its investigation which culminated in termination of her employment is dismissed.
*288 It is well settled that there is no cause of action for wrongful discharge of an at-will employee and that such employees will not be permitted to circumvent that rule by use of substitute nomenclature or claims, such as intentional infliction of emotional distress, or prima facie tort (Ingle v Glamore Motor Sales, 73 NY2d 183; Murphy v American Home Prods. Corp., 58 NY2d 293).
While conduct prior to and independent of the termination itself may be actionable (see, O’Reilly v Executone of Albany, 121 AD2d 772), here, plaintiff’s narrowing of her claim to conduct consisting solely of the Museum’s rejection of her denials and its request that she apologize to Zalinka and Ortner is unavailing. Disbelief of plaintiff’s denials and the request for an apology is well within the Museum’s discretion as the parties’ employer. In any event, the apology request was satisfied by plaintiff’s agreement to apologize for any distress she might have inadvertently caused.
Furthermore, the Museum’s conduct as alleged does not exhibit the extreme, outrageous or atrocious conduct necessary to support a claim for intentional infliction of emotional distress (see, Fischer v Maloney, 43 NY2d 553; Buffolino v Long Is. Sav. Bank, 126 AD2d 508).
As to the claim of tortious interference with prospective business relations, that can be established only by a showing that defendants intentionally interfered with a known business relationship through wrongful, malicious or unlawful means, and without justification. (Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183, 194; Della Pietra v State of New York, 125 AD2d 936, 938, affd 71 NY2d 792.) This is not a cause of action against an employer or its officers of abusive discharge in another guise, as in Ingle v Glamore Motor Sales (73 NY2d 183, 189, supra). Here the individual defendants are, in essence, strangers to that relationship. As outsiders, they may not wrongfully interfere. If plaintiff can prove the statements made by defendants were deliberate falsehoods, the unlawful means used to terminate the 20-year relationship between plaintiff and the Museum can be demonstrated. That cause of action must go to trial.
Plaintiff’s demands for punitive damage and attorneys’ fees made in conjunction with the Human Rights Law claim against the Museum are dismissed. Punitive damages are not available under the Human Rights Law (Thoreson v Penthouse Intl., 179 AD2d 29). Nor are attorneys’ fees recoverable in the *289 absence of contractual or statutory authority (Matter of Obas v Kiley, 149 AD2d 422). No such authority is alleged here.
Accordingly, defendants’ motion is granted only to the limited extent indicated, and otherwise denied. Defendants are directed to serve and file an answer to the remaining causes of action within 20 days of service of this order with notice of entry.