**Fior D'Aliza MINETOS, Plaintiff,**

v.

**CITY UNIVERSITY OF NEW YORK, Hunter College, Peter Basquin, Ruth DeFord (Kotecha), L. Michael Griffel, Russell Oberlin, and James S. Harrison, Defendants.**

**No. 92 Civ. 8785 (CBM).**

United States District Court, S.D. New York.

May 9, 1996.

Cohen Lippman Rosenberg by Barbara Ann Rosenberg, Pinskey & Foster by Ralph B. Pinskey, for Plaintiff.

Attorney General of the State of New York by Joel Graber, Patrick J. Flanagan, for Defendants.

## *OPINION*

MOTLEY, District Judge.

This case was tried to a jury before this court from October 16, 1995 to October 26, 1995.[1] Plaintiff, Fior D'Aliza Minetos, who had worked as an office assistant in the Music Department of Hunter College from 1981 until 1991, charged that: (1) defendants City University of New York and Hunter College had discriminated against her on the basis of her national origin and Hispanic accent in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. sec. 2000e *et seq.;* (2) defendants City University of New York and Hunter College had discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. sec. 621 *et seq.;* and (3) defendants Peter Basquin, Ruth DeFord (Kotecha), L. Michael Griffel, Russel Oberlin and James S. Harrison had tortiously interfered with her contractual rights in violation of New York State law. The jury found in favor of defendants on plaintiff's Title VII and ADEA claims and this court entered judgment as a matter of law in favor of defendants on plaintiff's state law claim. Plaintiff now moves for a new trial based on this court's finding of *Batson* error by defendants at the time of jury selection or, in the alternative, for a new trial on her state law claim for tortious interference with contractual relations. For the reasons set forth below, plaintiff's motions are denied.

## I. Background Facts

Jury selection in this case occurred on October 16, 1995. During this process, plaintiff objected that defendants' peremptory

---

**1.** For a recitation of the facts underlying this case, see this court's decision denying defendants' motion for summary judgment: *Minetos v. City University of New York, et al.,* 875 F.Supp. 1046 (S.D.N.Y.1995).

challenges were racially motivated in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Tr. 80–81.[2] Plaintiff claimed (and this court agreed) that defendants had used three peremptories to exclude two African–Americans and one Hispanic from the prospective jury. After plaintiff's objection, defendants passed on their fourth and final peremptory (as to an alternate juror) and allowed a Hispanic female to sit. This juror was the only minority member of the jury. Plaintiff requested that, in remedy, all excused jurors be recalled and added to the jury. Tr. 85. This court agreed that defendants had committed so-called *Batson* error, denied plaintiff's request and, at that stage of the proceedings, expressed the view that plaintiff would be entitled to a new trial if the jury found for defendants. Tr. 87. However, the court also noted on the record defendants' objection that plaintiff had used all of her peremptories to strike only white males.

The trial commenced and, at the end of plaintiff's case, defendants moved for judgment as a matter of law pursuant to Fed. R.Civ.P. 50.[3] This court reserved decision on defendants' motion and the trial continued. At the conclusion of the trial, special interrogatories were given to the jury, and the jury answered in favor of defendants, in relevant part as follows:

Has the plaintiff sustained her burden of proving, by a fair preponderance of the credible evidence, that she was discharged or constructively discharged by defendants?

1. Hunter College YES
2. Peter Basquin YES
3. James Harrison YES
4. Ruth DeFord YES
5. L. Michael Griffel YES
6. Russell Oberlin YES

If the answer to [the above question] is YES as to any defendant, has the plaintiff sustained her burden of proving, by a fair preponderance of the credible evidence,

that her discharge was motivated, in whole or in part, by her national origin or her age or both?

National Origin NO
Age NO

Defendants have offered legitimate, non-discriminatory reasons for transferring plaintiff out of the Music Department of Hunter College to another department.

Do you find that this reason was a pretext for the transfer? NO.

*See* Special Interrogatory To The Jury [sic], filed November 1, 1995. Although the jury's findings disposed of plaintiff's ADEA and Title VII claims, its conclusion that plaintiff was "discharged or constructively discharged" caused a dispute between the parties over whether plaintiff's tortious interference with contractual relations claim under state law should be separately submitted to the jury. The court heard oral argument on this point, reviewed the parties' proposed jury charges, and then granted defendants' earlier motion for judgment as a matter of law on this claim. The court did not, at that time, grant defendants' motion for judgment as a matter of law on plaintiff's federal claims because it would have been superfluous to do so in light of the jury's verdict.

On November 1, 1995, in keeping with the jury's special interrogatories and this court's judgment as a matter of law, plaintiff's complaint was dismissed and costs awarded to defendants. Shortly thereafter, on November 7, 1995, plaintiff made the instant motion for a new trial on all her claims or, in the alternative, for a new trial on her state law claim for tortious interference with contractual relations. On April 29, 1996 plaintiff's motion was the subject of a hearing before this court and both sides submitted further briefing. The court now addresses plaintiff's motion for a new trial as well as defendant's motion for a directed verdict on plaintiff's federal claims.

---

2. "Tr." refers to the transcript of the trial in this case.

3. Rule 50 provides, in relevant part: "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party

on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

## II. Use Of Peremptory Challenges

In *Batson v. Kentucky,* the Supreme Court held that the equal protection clause of the Fourteenth Amendment forbids a prosecutor to use peremptory challenges to exclude African Americans from jury service because of their race. 476 U.S. at 96–98, 106 S.Ct. at 1722–1724. This was later extended to civil litigants, who are considered "state actors" when exercising peremptory challenges. *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 621, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660 (1991).

The three-step test originally enunciated by the Supreme Court to prove *Batson* error was recently reiterated by the Court in *Purkett v. Elem:* "once the opponent of a peremptory challenge has made out a *prima facie* case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination." —— U.S. ——, —— ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995) (citing *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion); and *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1722–1724).

*Purkett,* however, gave a new spin to step two of this test. While the Supreme Court in *Batson* had held that "[t]he prosecutor ... must articulate a neutral explanation related to the particular case to be tried" and give a "clear and reasonably specific" explanation of his "legitimate reasons for exercising the challenge," 476 U.S. at 98, 106 S.Ct. at 1723–24, the Supreme Court in *Purkett* has asserted that the second step "does not demand an explanation that is persuasive, *or even plausible.*" *Id.* (Emphasis added).

*Purkett's* variation on *Batson's* test did not escape criticism from Justices Stevens and Breyer:

Today, without argument, the Court replaces the *Batson* standard with the surprising announcement that any neutral explanation, no matter how "implausible or fantastic" even if it is "silly or supersti-

tious," is sufficient to rebut a *prima facie* case of discrimination. . . . The Court's unnecessary tolerance of silly, fantastic and superstitious explanations ... demeans the importance of the values vindicated by our decision in *Batson.*

*Purkett,* —— U.S. at —— – ——, 115 S.Ct. at 1774–1776 (Stevens, J. dissenting). Indeed, *Purkett* leaves one wondering what explanation would *not* satisfy its second step, and brings to mind Justice Marshall's concurrence in *Batson,* in which he stated: "[Lawyers] are left free to discriminate ... in jury selection provided that they hold discrimination to an 'acceptable' level." 476 U.S. at 105, 106 S.Ct. at 1728 (Marshall, J., concurring).

During jury selection, this court determined in response to plaintiff's objection that defendants were using their peremptory challenges to strike African–American and Hispanic venirepersons based on their race and ethnicity. Tr. 80–92. Specifically, plaintiff made a *prima facie* showing that defendants were exercising their peremptory challenges in a race-based fashion, and defendants proffered the requisite "facially race-neutral" reasons for their strikes, as follows:

[The Court]: What do you say [in response to plaintiff's challenge of Batson error]?

[Defendants' Counsel]: Well, we have nondiscriminatory reasons for each of the three exercises of our peremptory challenges.

[The Court]: You can put them on the record.

[Defendants' Counsel]: The individual Eddie Rosa indicated that he didn't feel that people necessarily needed to speak English on the job. And the question of accent and foreign language is right at the heart of this case. That's one of the charges. [Plaintiff] was identified as Hispanic on account of her accent the plaintiff claims. With respect to the black woman, her name was Victoria Simmons, and she was a teacher in the New York City public school system which is exactly what the plaintiff is. The plaintiff has spent two of the last several years between these events

and the present working as a full time substitute teacher in the New York City public schools so we felt the identification was a matter of concern to us. Mr. Judd is a blue collar worker with no office experience whatsoever, which is a factor for us. People who have never worked in an office we feel would have difficulty understanding the office dynamics which are very important to this case.

Tr. 81–82. Since defendants struck exclusively Hispanic and African–American venirepersons and created an unmistakable "pattern" as warned about in *Batson*, this court determined that their race-neutral explanations hid discriminatory intent.

■ Defendants then raised the objection that plaintiff had likewise committed *Batson* error by striking only white male members from the prospective jury. Tr. 90. In connection with this charge, the following exchange took place at side bar:

[Defendants' Lawyer]: The court could extend an additional challenge to plaintiff's counsel at this point in time so that they can remove another white professional male from the jury.

[Plaintiff's Lawyer]: I think as I've indicated before, Your Honor, I think if Your Honor finds, as you have so found, that they have acted in a discriminatory fashion, then there has to be some form of punishment. And I think the only appropriate punishment is to—

[The Court]: What about defendants' claim now made that you've used your challenges to remove white males?

[Plaintiff's Lawyer]: No. What I did was to exclude individuals who we viewed as pro-management. . . .

[The Court]: . . . . I think this case illustrates what some Supreme Court justices have noted before, particularly I think, maybe it was a concurring opinion in *Batson*, that peremptory challenges should be eliminated altogether, because like you just pointed out, you think the plaintiffs are using theirs to exclude white males in a case like this. If we have challenge for

cause, that should be sufficient. How do you control really a situation like this in a case involving discrimination? It comes up in every case. So maybe this is a case that can be used as a reason why we shouldn't have any peremptory challenges. That applies to both sides. Let's proceed.

Tr. 90–92. On further review of the full process of jury selection in this case as well as the record of the trial and of the hearing on the instant motion, this court agrees with defendants. This court does not find plaintiff's proffered reason for striking the white males credible. In New York City the business community is overwhelmingly and disproportionately white. Thus the "promanagement" excuse offers easy cover for those with discriminatory motives in jury selection. This court also notes that striking a venireperson based on his or her employment is explicitly *presumed pretextual* under guidelines set forth by the appellate courts in New York. *See* discussion *infra*.

■ Moreover, plaintiff's argument that defendants' lack "standing" to make this objection because the jury was, in the end, white, exposes plaintiff's basic misunderstanding of the rights protected by *Batson*. The Supreme Court has reiterated time and again that "[r]acial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming reality." *Edmonson*, 500 U.S. at 628, 111 S.Ct. at 2087 (citations omitted). Race discrimination, in any form, frustrates the meaningful administration of justice. A recent decision by the New York Court of Appeals confirms this. *See People v. Jones*, 88 N.Y.2d 172, 666 N.E.2d 542, 643 N.Y.S.2d 949 (1996). The Court of Appeals reviewed three cases of so-called reverse-*Batson* claims, in which black defendants' had struck white jurors and given reasons found by the trial courts to be pretextual for discriminatory motives.[4] There, the prosecutors had objected on behalf of the excluded jurors. The Court of Appeals noted that "the *Batson* rule circumscribes racially-rooted peremptory excusals by lawyers for both the defense and the prosecution equally," and then emphasized

---

**4.** These are: *People v. Jones, People v. Lowery,* and *People v. Payne.* For a discussion of these cases; *see Huge Civil Rights Verdict Before Court Of Appeals,* 215 N.Y.L.J. 52 (Mar. 18, 1996).

the need to "promulgate protocols designed to condemn, expose and root out such practices...." *Id.* (Citations omitted).

It has, thankfully, remained unquestioned since *Batson* that "racial discrimination in the qualification or selection of jurors offends the dignity of persons and the integrity of the courts" and "[t]o permit racial exclusion in this official forum compounds the racial insult inherent in judging a person by the color of his or her skin." *Id.* (citing *Powers v. Ohio*, 499 U.S. 400, 402, 111 S.Ct. 1364, 1365, 113 L.Ed.2d 411 (1991) (holding that a defendant, regardless of his or her race, may object to a prosecutor's race-based exclusion of persons from the jury)).

 For these profound reasons, the Supreme Court squarely *upheld*, as a uniform matter, a litigant's third party standing to assert a prospective juror's equal protection rights in situations precisely like the one at hand, *i.e.* civil proceedings. *Edmonson*, 500 U.S. at 629, 111 S.Ct. at 2087–88. In fact, "[the] *sole purpose* [of peremptory challenges] is to permit litigants to assist the government in the selection of an impartial trier of fact." *Id.* (emphasis added). Thus plaintiff's discriminatory use of her peremptory challenges defies the only reason for having them and violates each excluded juror's rights, irrespective of the final racial makeup of the jury. Plaintiff's "unclean hands" in this regard leave her poorly situated to complain about unfair treatment at trial and counsels strongly against the grant of a new one.[5]

This case illustrates the bedevilling problems associated with peremptory challenges which, by their very nature, invite corruption of the judicial process. This is particularly true in Title VII cases, where parties are obviously tempted to exclude jurors on the basis of race or sex or national origin alone. As Mr. Justice Marshall stated in his concurrence to *Batson:*

Much ink has been spilled regarding the historic importance of ... peremptory challenges.... But this Court has also repeatedly stated that the right of the peremptory challenge is not of constitutional magnitude, and may be withheld altogether without impairing the constitutional guarantee of impartial jury and fair trial.... I applaud the Court's holding that the racially discriminatory use of peremptory challenges violates the Equal Protection Clause, and I join in the Court's opinion. However, only by banning peremptories entirely can such discrimination be ended.

476 U.S. at 108, 106 S.Ct. at 1729 (Marshall, J., concurring) (citations omitted).

 Time has proven Mr. Justice Marshall correct. Ten frustrating years have now passed since the Supreme Court's decision in *Batson*. *Purkett* promises to add more years of vexatious litigation over a right lacking constitutional statute in our jurisprudence. All peremptory challenges should now be banned as an unnecessary waste of time and an obvious corruption of the judicial process. Such a change would have the added benefit of putting an end to the awkward analyses set forth in *Batson* and its progeny which have proved over ten years to be uncertain in their application and which have caused great consternation in the courts. *See e.g., Purkett,* —— U.S. at —— — ——, 115 S.Ct. at 1772–1774 (Stevens, J. dissenting).

A brief review of the case law shows that judicial interpretations of *Batson* are all over the map.[6] This is particularly true of *Batson's* requirement that court's guess at what facially race-neutral reasons are, in fact, pretextual for discriminatory motives. *See e.g. Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (striking all Spanish-speaking Latino venirepersons because they would not accept court inter-

---

5. As the Supreme Court stated over a century ago: " 'in the selection of jurors to pass upon [a defendant's] life, liberty or property, there shall be no exclusion of his race, and no discrimination against them, because of their color.' " *Neal v. Delaware*, 103 U.S. 370, 394, 26 L.Ed. 567 (1881) (quoting *Virginia v. Rives*, 100 U.S. 313, 323, 25 L.Ed. 667 (1880)).

6. For a thorough discussion of the various Circuits' conflicting approaches to *Batson* claims, see David Zonana, *The Effect of Assumptions about Racial Bias on the Analysis of Batson's Three Harms and the Peremptory Challenge*, 1994 Ann.Surv.Am.L. 203 (1995).

pretor's translation of Spanish-speaking witnesses was not pretextual); *United States v. Alvarado,* 951 F.2d 22 (2d Cir.1991) (striking African–American and Hispanic venirepersons for being young or for being social workers was not pretextual); *Polk v. Dixie Ins. Co.,* 972 F.2d 83 (5th Cir.1992) (striking African–American venireperson for lack of "eyeball contact" was not pretextual), *cert. denied,* 506 U.S. 1055, 113 S.Ct. 982, 122 L.Ed.2d 135 (1993); *U.S. v. Clemons,* 843 F.2d 741 (3d Cir.1988) (striking all African–American venirepersons for being single and young was not pretextual), *cert. denied,* 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988); *United States v. Tucker,* 836 F.2d 334 (7th Cir.1988) (striking all African–American venirepersons for lack of education and business experience was not pretextual); *but cf., Garrett v. Morris,* 815 F.2d 509 (8th Cir.) (striking all African–American venirepersons for lack of education and knowledge was pretextual), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987); *Splunge v. Clark,* 960 F.2d 705 (7th Cir.1992) (striking African American venireperson based on "feelings … that she would not be a good juror" was pretextual); *United States v. Bishop,* 959 F.2d 820 (9th Cir.1992) (striking African–American venirepersons for living in low-income neighborhood was pretextual).

It is even possible to defeat a *Batson* claim where the attorney has stated on the record that race was a factor in the decision to strike a prospective juror, if that attorney can show that he or she would have struck the individual for "race-neutral" reasons anyway. *See Howard v. Senkowski,* 986 F.2d 24 (2d Cir.1993).

In an effort to lend method to the madness, the New York Appellate Courts have drawn up some "Guidelines" to help trial courts apply *Batson's* second step.[7] Under these guidelines, certain reasons for striking jurors, offered in response to a challenge of *Batson* error, will be presumed pretextual on their face and certain reasons will be presumed *not* pretextual. Reasons that will be presumed pretextual include: (1) the juror's employment; (2) the juror's being an employee in a hierarchical company; (3) the attorney's concern for a balanced jury; (4) the juror's living in the same or an adjacent community; (5) the juror's being too old or too young; (6) the attorney's lack of time to question the juror; (7) the attorney's belief that the juror would not be fair; (8) the juror's lack of strength; (9) the juror's clothing, where other juror's clothing was not an issue; (10) the attorney's general reassurance that the strike was in good faith; (11) the attorney's feeling that the juror "did not appeal" to him or her.

Reasons that will be presumed non-pretextual are more numerous, and include: (1) the juror's having a job that is police-related; (2) the juror gives inconsistent statements regarding his or her leanings; (3) prior criminal jury service by the juror; (4) the juror's familiarity with the defendant; (5) the juror's familiarity with the crime scene; (6) the juror's statement that he or she cannot be fair; (7) the juror is employed in a creative field; (8) the juror's lack of mental capacity; (9) the juror's criminal record; (10) the juror's membership in a sympathetic religion; (11) the juror's knowledge of the language that is to be interpreted; (12) the juror's expressed disapproval of the defendant not testifying; (13) the juror's tardiness; (14) the juror's related expertise; (15) the juror's equivocal attitude about having been assaulted; (16) the juror's displeasure concerning past dealings with the police; (17) the juror's friendliness with a policeperson.

Subjective reasons offered by counsel to justify peremptory challenges (such as the juror's hairstyle, bad facial expression, body language, or over-responsiveness to opposing counsel) will be evaluated by the trial court and the peremptory challenge will be sustained if the trial court confirms there is a sound and credible basis for it.[8] Of course, listing in this manner has the unfortunate effect of creating a how-to guide for defeating *Batson* challenges. Such guidelines do not ensure that juror strikes are not racially motivated—only that advocates are on notice of which reasons will best survive judicial

---

7. *See Appellate Court Guidance On Batson Challenges,* 215 N.Y.L.J. 48 (Mar. 12, 1996).

8. *See id.*

review. Further, as observed by Mr. Justice Marshall ten years ago:

'It is even possible that an attorney may lie to himself in an effort to convince himself that his motives are legal.' A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is 'sullen' or 'distant,' a characterization that would not have come to his mind if a white juror had acted identically. A judge's own conscious or unconscious racism may lead him to accept such an explanation as well supported.... Even if all parties approach the Court's mandate with the best of conscious intentions, that mandate requires them to confront and overcome their own racism on all levels—a challenge I doubt all of them can meet. It is worth remembering that '114 years after the close of the War Between the States and nearly 100 years after Strauder, racial and other forms of discrimination still remain a fact of life, in the administration of justice as in our society as a whole.'

*Batson,* 476 U.S. at 106–07, 106 S.Ct. at 1728 (Marshall, J., concurring) (citations omitted).

It took twenty years of judicial experience with the Supreme Court's decision in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) for the Supreme Court to realize that its decision regarding peremptory challenges placed a "crippling burden of proof" on defendants. *See Batson,* 476 U.S. at 91–92, 106 S.Ct. at 1721. And while the Supreme Court has often recognized that peremptory challenges can be exercised in a manner contravening the equal protection clause of the Fourteenth Amendment; the Court has never explicitly considered whether peremptory challenges *per se* violate equal protection. This court holds that they do.

It is time to put an end to this charade. We have now had enough judicial experience with the *Batson* test to know that it does not truly unmask racial discrimination. In short,

lawyers can easily generate facially neutral reasons for striking jurors and trial courts are hard pressed to second-guess them, rendering *Batson* and *Purkett's* protections illusory. After ten years, this court joins in Justice Marshall's call for an end to peremptory challenges and the racial discrimination they perpetuate.[9]

Accordingly, this court vacates its prior oral decision at the time of jury selection to the effect that plaintiff's remedy for defendants' *Batson* violation, in the event of a verdict for defendants, would be a new trial. This court now holds that, given plaintiff's own *Batson* error, equity does not favor granting her a new trial on this basis. This court also holds that judicial experience with peremptory challenges proves that they are a cloak for discrimination and, therefore, should be banned.

### III. Standard For A New Trial

■ Having rejected plaintiff's claim to a new trial based on defendants' *Batson* error, this court now considers whether plaintiff meets the standard for a new trial under Fed.R.Civ.P. 59 and the law of this Circuit. Rule 59 provides: "A new trial may be granted ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." The decision whether to grant a new trial "is committed to the sound discretion of the court." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). In deciding a motion for a new trial, the court "is free to weigh the evidence ... and need not view it in the light most favorable to the verdict winner." *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992).

■ A new trial is warranted only if this court is convinced that the jury reached a

---

**9.** Many commentators have likewise advocated the end of peremptory challenges, for example: David Zonana, *The Effect of Assumptions about Racial Bias on the Analysis of Batson's Three Harms and the Peremptory Challenge,* 1994 Ann. Surv.Am.L. 203 (1995); *The Supreme Court— Leading Cases: Equal Protection,* 105 Harv.

L.Rev. 255 (1991); Robert L. Harris, Jr., *Redefining the Harm of Peremptory Challenges,* 32 Wm. & Mary L.Rev. 1027 (1991); Albert W. Altschuler, *The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts,* 56 U.Chi.L.Rev. 153 (1991).

seriously erroneous result or that the verdict is against the weight of the evidence, making its enforcement a miscarriage of justice. *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir.1983). In light of the extraordinarily weak case presented by plaintiff at trial, this court can not find that the jury so erred.

A *prima facie* case of discrimination under both the ADEA and Title VII is established when a party shows: (1) that she is a member of a protected class; (2) that she is qualified for the position; and (3) that, despite her qualifications, she was discharged under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Russo v. Trifari, Krussman & Fishel, Inc.*, 837 F.2d 40, 43 (2d Cir.1988); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323 (2d Cir.1983). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to show "some legitimate, nondiscriminatory reason" for the employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The burden of persuasion, however, remains at all times with the plaintiff. *Russo*, 837 F.2d at 43.

Plaintiff did not prove a *prima facie* case at trial. For instance, plaintiff testified that L. Michael Griffel, a named defendant and professor in Hunter College's Music Department, mentioned her age on one occasion, but specifically affirmed that no other defendant had ever mentioned her age. Tr. 353–54. It was also not shown that any of the defendants had ever referred to plaintiff's Hispanic background. In short, no evidence was offered that explicitly or implicitly supported plaintiff's claims of discrimination under Title VII and the ADEA.

Plaintiff also failed to prove that she was "discharged." A "constructive discharge" occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1156 (2d Cir.1993). An employee's resignation is considered a constructive discharge where working conditions would have been so difficult that a reasonable person in the employee's position would have felt compelled to resign. *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 361 (2d Cir.1993).

In this case, nothing in the record supports plaintiff's contention that her working conditions were "intolerable" or "so difficult" that an ordinary person would have had to leave. What the record does establish is that plaintiff was transferred out of the Music Department against her wishes, but consistent with her "White Collar" union contract with City University of New York and Hunter College. *See* Plaintiff's Exhibit # 41. She, herself, decided not to report, as directed, to the dean's office for reassignment on two occasions: in June and November of 1991. Tr. 262. And although she alleged that it was emotionally traumatic to be on the Hunter College campus, she returned there for the purpose of enrolling in fall classes. Tr. 390. Thus we find no support for the proposition that defendants forced plaintiff into involuntary resignation.

Due to plaintiff's complete failure of proof of national origin or age discrimination and constructive discharge at trial, plaintiff's motion for a new trial on all claims is denied. The jury's conclusions that plaintiff's discharge was not motivated by discrimination and that defendants' reasons for transferring her were not pretextual are neither seriously erroneous nor against the weight of the evidence. *See* Special Interrogatory To The Jury, Questions I(2) and II(1); *Smith*, 861 F.2d at 370; *Mallis*, 717 F.2d at 691. Thus plaintiff is not entitled to a new trial under Fed.R.Civ.P. 59.

### IV. Judgment As A Matter Of Law On Plaintiff's Federal Claims

When plaintiff rested her case, defendants moved for judgment as a matter of law on all plaintiff's claims. The court, at that time, reserved decision on defendants' motion. Pursuant to Fed.R.Civ.P. 50(b), when the court does not grant a motion for judgment as a matter of law made at the close of the evidence, "the court is considered to have submitted the action to the jury *subject to the*

*court's later deciding the legal questions raised by the motion."* (Emphasis added). Given plaintiff's total lack of proof of either age or national origin discrimination, it is evident that, without ascertaining the weight or credibility of the witnesses' testimony, any reasonable fact-finder would have found for defendants. *See Enercomp, Inc. v. McCorhill Pub., Inc.* 873 F.2d 536, 541 (2d Cir.1989) (judgment as a matter of law is proper when, without considering the credibility of witnesses or the weight their testimony deserves, there is only one conclusion a reasonable fact-finder could reach) (citing *Smith,* 861 F.2d at 367; *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir. 1987); and *Mattivi v. South African Marine Corp.,* 618 F.2d 163, 167 (2d Cir.1980)). Accordingly, defendants motion on which this court reserved decision as to plaintiff's Title VII and ADEA claims is hereby granted, in accordance with Fed.R.Civ.P. 50(b)(1)(C) (permitting judgment as a matter of law following return of the jury verdict where a party renews his or her motion after trial). As discussed below, defendants motion for judgment as a matter of law was granted following the jury's verdict as to plaintiff's state law claim.

## V. Motion For A New Trial On Plaintiff's State Law Claim

Plaintiff also requests, in the alternative, a new trial on her state law claim. Plaintiff argues that the court should reconsider its "judgment" and suggests that we "hold that a reasonable jury could find that wrongful means were used by [defendants] to cause Plaintiff to leave [Hunter College's] Music Department." *See* Plaintiff's Legal Memorandum In Support Of Her Motion For A New Trial ("Pl.Mem."), p. 12. Plaintiff misapprehends this court's disposition of her state law claim. Judgment was not entered for defendants based upon the jury's special verdict; rather, defendants' motion for judgment as a matter of law was granted. *See*

*Enercomp,* 873 F.2d at 541. Thus this court found that, as a matter of law, plaintiff's state law claim must fail—notwithstanding the jury's determination that defendants had "discharged or constructively discharged" plaintiff.[10]

■ To recover for tortious interference with a contract under New York law, plaintiff must prove the existence of a valid contract between plaintiff and a third party, defendants' knowledge of that contract, and defendants' improper intentional interference with its performance. *Enercomp,* 873 F.2d at 541 (citing *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 189–90, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980)). Like plaintiff's federal claims, this cause of action was predicated upon plaintiff's unproven allegations of discrimination and constructive discharge and on this basis must fail.

■ Furthermore, defendants Peter Basquin, Ruth DeFord (Kotecha), L. Michael Griffel, Russell Oberlin, and James S. Harrison are all professors in Hunter College's Music Department. These individuals cannot be liable for tortious interference with contractual relations under New York State law since they are agents of Hunter College. It is well-settled that "only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract." *Koret, Inc. v. Christian Dior, S.A.,* 161 A.D.2d 156, 157, 554 N.Y.S.2d 867 (1st Dep't), *appeal denied,* 76 N.Y.2d 714, 564 N.Y.S.2d 718, 565 N.E.2d 1269 (1990) (citing *Greyhound Corp. v. Commercial Casualty Ins. Co.,* 259 A.D. 317, 320–21, 19 N.Y.S.2d 239 (1st Dep't 1940); and *Manley v. Pandick Press,* 72 A.D.2d 452, 454, 424 N.Y.S.2d 902 (1st Dep't), *appeal dismissed,* 49 N.Y.2d 981, 428 N.Y.S.2d 950, 406 N.E.2d 805 (1980)). These individual defendants were not "third parties" to plaintiff's contract with Hunter College and "[a]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he

---

**10.** Inexplicably, plaintiff contends that defendants' renewed motion for judgment as a matter of law was *denied* at the close of the defense. *See* Pl.Mem., p. 2. Yet the record and judgment are clear; defendants' motion was granted on the state law claim. *See* Tr. 9–10, October 26, 1995;

Civil Judgment filed November 1, 1995. Again, it was unnecessary to grant defendants' motion for judgment as a matter of law on plaintiff's federal claims because the jury had already disposed of them.

[or she] is acting on behalf of his principal and within the scope of his authority." *Nu–Life Constr. Corp. v. Board of Ed.,* 204 A.D.2d 106, 107, 611 N.Y.S.2d 529 (1st Dep't) (citations omitted), *appeal dismissed,* 84 N.Y.2d 850, 617 N.Y.S.2d 139, 641 N.E.2d 160 (1994). Plaintiff offered no evidence that the individual defendants were acting outside the scope of their authority and, in fact, premised her federal claims on the supposition that they were not.[11]

Following the jury's special verdict in this case, this court has determined that reasonable persons could not conclude, as a matter of law, that defendants knowingly interfered with plaintiff's contract with the university. Judgment as a matter of law was accordingly entered on plaintiff's state law claim for tortious interference with contractual relations on November 1, 1995. *See* Civil Judgment, filed November 1, 1995. For the same reason, plaintiff's motion for a new trial on her state law claim is denied.

## VI. *Conclusion*

For the reasons set forth above, plaintiff's claim to a new trial based on *Batson* error by defendants is denied, as is plaintiff's motion for a new trial under Fed.R.Civ.P. 59 on both her federal and state law claims. Moreover, since the only reasonable verdict in light of the evidence would have been one in favor of defendants on all claims, defendants' motion for judgment as a matter of law is now granted as to plaintiff's Title VII and ADEA claims.

### *ORDER*

In accordance with the accompanying Opinion, plaintiff's motion for a new trial on all her claims and plaintiff's motion in the alternative for a new trial on her state law claim for tortious interference with contractual relations, are hereby DENIED; and defendants' motion for judgment as a matter

of law on plaintiff's Title VII and ADEA claims is hereby GRANTED.

SO ORDERED.

---

**11.** Several of the cases cited by plaintiff in support of her state law claim also note that only third parties to an employment relationship may tortiously interfere with it. *See e.g., Herlihy v. Metropolitan Museum of Art,* 160 Misc.2d 279, 288, 608 N.Y.S.2d 770 (Sup.Ct.N.Y.Co.1994) (denying motion to dismiss claim for tortious interference with prospective business relations in part because "individual defendants are, in essence, strangers to [the employment] relationship"), *affirmed in relevant part,* 214 A.D.2d 250, 633 N.Y.S.2d 106 (1st Dep't 1995); *Keenan v. Artintype Inc.,* 145 Misc.2d 90, 96, 546 N.Y.S.2d 741 (Sup.Ct.N.Y.Co.1989) ("a claim for tortious interference with a[n employment] contract will not lie against the officer of the corporation where the breach was allegedly committed by his corporation.").