

**FILED**

Mar 16 2018, 10:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven Wade Childress, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 16, 2018 <br><br> Court of Appeals Case No. <br> 48A02-1707-CR-1658 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. <br> 48C04-1601-F3-191 |

**Crone, Judge.**

## Case Summary

[1] Steven Wade Childress appeals his conviction for level 3 felony armed robbery. He argues that the trial court clearly erred in rejecting his claim, commonly known as a *Batson* claim, that the prosecutor's peremptory challenge to a

potential juror was improperly based on the juror's race.  Finding no error, we affirm.

## Facts and Procedural History

[2] In October 2015, Childress and Demerio Strong went to a party at T.B.'s house. Childress and Strong discussed committing a robbery.  T.B. texted Darren Sloss that his cousin was at her house and he should come over.  Sloss drove to T.B.'s and parked behind her house.  When Sloss went in the house, he did not see his cousin and decided to leave.  He exited the house and was attacked outside by Childress and Strong.  Strong held a gun to the back of his head and forced him to the ground.  Childress and Strong asked him for money.  While he was on the ground, Sloss saw Childress rummaging around his car.  Sloss was kicked, punched, and pistol-whipped.  Some of his clothing was ripped off.  Several women came outside, prompting Childress and Strong to run away.  Sloss walked to a hospital and reported the robbery.  Police found his clothes and wallet behind T.B.'s house, but the money in his wallet, about $200, was gone.

[3] In January 2016, the State charged Childress with level 3 felony armed robbery. In May 2017, a jury trial was held.  During voir dire, the prosecutor questioned the potential jurors at length regarding their understanding of reasonable doubt. When the venire was passed to defense counsel, he also questioned the potential jurors about the burden of proof.  When defense counsel's questioning was finished, the parties presented the trial court with their for cause and peremptory challenges.  The State sought to exercise one of its peremptory challenges to strike Potential Juror 8.  Childress raised a *Batson* claim, noting

that two African-American jurors had been excused for cause by agreement of the parties but Potential Juror 8 was the only remaining African-American juror. Tr. Vol. 2 at 166. The prosecutor responded,

> *When defense was doing his questioning at the end* and he said what is your definition of reasonable doubt and *the first thing out of [Potential Juror 8's] mouth was no doubt.* That in fact is too high of a burden. When he was questioned by [the prosecutor] on the different (indiscernible—paper rustling) with the witness a lot of the things that were going back and forth, but the main concern was when he said what is reasonable doubt and his actual comment was a hundred percent, no, a hundred percent. And his answer was *no doubt.* It was that statement that we struck that was most (indiscernible).

*Id.* at 166-67 (emphases added). Defense counsel countered, "I don't think a single answer should be the basis for it. I think [], (indiscernible—paper rustling) factual situation in which we have primarily [] black individuals, witnesses, [] the accused, [] and for that reason we think that [Potential Juror 8] who is African-American should remain on the jury." *Id.* at 167. The trial court noted that at the outset Potential Juror 2 answered "a hundred percent." *Id.* The prosecutor explained,

> [Potential Juror 2] was a hundred percent, you're correct; however, then that was the first answer when the definition was given and then she came around and later said, no, it doesn't have to be a hundred percent. She said I understand after definitions had been given. That's when [Potential Juror 8] said *no doubt*, and he never came back from that. So, at this point (indiscernible—coughing).

*Id*. (emphasis added). Defense counsel stated that Potential Juror 8 was not questioned about his answer any further. *Id*. The trial court responded,

> [I]t's different than a cause challenge. [There] doesn't have to be an opportunity to rehabilitate or respond to what they say. The question is is there an independent (indiscernible—coughing) factor that would support a good faith basis to exercise a peremptory. And here [] I think frankly it's a closer call than we usually see on these challenges, but I think *there is a distinction to be drawn between the answer between Potential Juror 2 and No. 8 and the timing*. So, at this point, I'm going to overrule the **Batson** objection and the State's challenge to Juror No. 8 will stand.

*Id*. at 167-68 (emphasis added) (underlining omitted).

[4] The jury found Childress guilty as charged. The trial court sentenced him to twelve years with eight years suspended to probation. This appeal ensued.

## Discussion and Decision

[5] Childress argues that the trial court committed reversible error in denying his *Batson* claim. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). The exclusion of even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause. *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012). "Upon appellate review, a trial court's decision concerning whether a peremptory challenge is

discriminatory is given great deference, and will be set aside only if found to be clearly erroneous." *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001).

[6] When a defendant raises a race-based *Batson* claim, three steps are involved. First, the defendant must make a prima facie showing that there are "circumstances raising an inference that discrimination occurred." *Addison*, 962 N.E.2d at 1208. Second, if the defendant makes a prima facie showing, the burden shifts to the prosecution to "'offer a race-neutral basis for striking the juror in question.'" *Id*. at 1209 (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)). "[T]he race-neutral explanation must be more than a mere denial of improper motive, but it need not be 'persuasive, or even plausible.'" *McCormick v. State*, 803 N.E.2d 1108, 1110 (Ind. 2004) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). "'[T]he issue is the facial validity of the prosecutor's explanation.'" *Id*. (quoting *Purkett*, 514 U.S. at 768). "A neutral explanation means 'an explanation based on something other than the race of the juror.'" *Id*. at 1111 (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)). "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Addison*, 962 N.E.2d at 1209 (quoting *Purkett*, 514 U.S. at 768). Third, the trial court must determine "'whether the defendant has shown purposeful discrimination.'" *Id*. (quoting *Snyder*, 552 U.S. at 477). "It is then that 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" *Id*. at 1210 (quoting *Purkett*, 514 U.S. at 768). The defendant may offer additional evidence to demonstrate that the prosecutor's explanation was pretextual, and

the trial court assesses the credibility of the State's race-neutral explanation "'in light of all evidence with a bearing on it.'" *Id*. (quoting *Miller-El v. Dretke*, 545 U.S. 231, 251-52 (2005)). Although this third step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Highler v. State*, 854 N.E.2d 823, 828 (Ind. 2006) (quoting *Purkett,* 514 U.S. at 768). "[I]n considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder*, 552 U.S. at 478.

[7] Childress asserts that the trial court erroneously concluded that the prosecutor's peremptory strike of Potential Juror 8 was not racially motivated. He contends that the record does not support the prosecutor's claim that Potential Juror 8 answered "no doubt" when defense counsel asked what reasonable doubt meant, and therefore the prosecutor misrepresented what Potential Juror 8 answered, which undermines the State's race-neutral reason for the strike. Unfortunately, our review of his argument is hindered by the significant deficiencies in the transcript. Childress's trial "was taken down by machine recording" and later transcribed. Tr. Vol. 4 at 142. The transcript contains numerous instances of statements by the prosecutor, defense counsel, and the potential jurors that are labeled "indiscernible." Also, the transcript identifies each potential juror as "Prospective Juror," and consequently, we cannot determine with certainty which statements correspond to a specific potential

juror unless that juror was addressed by name. Even if we accept Childress's identification of specific statements as belonging to Potential Juror 8, many of those answers are "indiscernible." Thus, Childress's claim that the record does not support the prosecutor's reason for striking Potential Juror 8 is based on an incomplete transcript.

[8] The appellant bears the burden of presenting a record that is complete with respect to the issues raised on appeal. *Moffitt v. State*, 817 N.E.2d 239, 247 (Ind. Ct. App. 2004) (citing *Ford v. State*, 704 N.E.2d 457, 461 (Ind. 1998)), *trans. denied*. Two appellate rules might have assisted Childress in meeting his burden. Indiana Appellate Rule 31 establishes a procedure for satisfying this burden when a transcript of the evidence is unavailable. Section A of the rule provides,

> If no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection. The party shall then file a motion to certify the statement of evidence with the trial court or Administrative Agency. The statement of evidence shall be submitted with the motion.

Section B gives the opposing party fifteen days to respond, and Section C authorizes the trial court, after a hearing if necessary, to certify a statement of evidence, which then becomes part of the clerk's record. We also note that Indiana Appellate Rule 32 provides that if a disagreement arises as to whether the clerk's record or transcript accurately discloses what occurred in the trial

court, any party may move the trial court to resolve the disagreement, and the trial court "shall" issue an order that either confirms that the clerk's record or transcript is accurate or corrects the clerk's record or transcript to reflect what actually occurred.

[9] Despite its deficiencies, the transcript reveals that neither defense counsel nor the trial court disputed the prosecutor's claim that when asked by defense counsel what reasonable doubt meant, Potential Juror 8 answered "no doubt." Tr. Vol. 2 at 166-68. In the absence of anything in the record that is contrary to the prosecutor's representation when it was submitted to the trial court, we decline to find that the prosecutor misrepresented Potential Juror 8's answer. Thus, Childress's argument that the prosecutor's alleged misrepresentation undermines his race-neutral reason is unavailing.

[10] Childress also argues that the trial court erroneously concluded that the prosecutor's peremptory strike of Potential Juror 8 was not racially motivated because the prosecutor subjected the juror to heightened scrutiny, the prosecutor failed to re-examine the juror after the objectionable answer, and Potential Juror 2 provided an answer identical to Juror 8's but Juror 2 was not struck. We cannot agree that the prosecutor subjected Potential Juror 8 to heightened scrutiny. Our review of the transcript reveals that the prosecutor questioned many potential jurors at length about their understanding of reasonable doubt. As for the prosecutor's failure to re-examine Potential Juror 8, we note that the juror gave the unacceptable answer during defense counsel's questioning. The prosecutor was not required to re-examine the juror.

[11]     Finally, we cannot agree with Childress's assertion that Potential Juror 2, who was not struck, gave an answer identical to Potential Juror 8's. "It is certainly true that 'if a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step.'" *Addison*, 962 N.E.2d at 1210 (quoting *Miller-El*, 545 U.S. at 241). Here, however, there is a salient difference between Potential Jurors 2 and 8. The prosecutor explained that Potential Juror 2 "came around and later said, no, it doesn't have to be a hundred percent. She said I understand after definitions had been given. That's when [Potential Juror 8] said no doubt, and he never came back from that." Tr. Vol. 2 at 167. The record shows that when the prosecutor initially questioned Potential Juror 2 about her understanding of beyond a reasonable doubt, she initially answered "a hundred percent sure." *Id*. at 104. But after further explanation and illustration from the prosecutor about what beyond a reasonable doubt required, she agreed that beyond a reasonable doubt was not a hundred percent. *Id*. at 110. Thus, Potential Juror 2 revised her understanding of reasonable doubt and negated her original response. In contrast, even after questioning and explanation by the prosecutor, Potential Juror 8 expressed his belief that reasonable doubt meant no doubt when he was later questioned by defense counsel. Ultimately, Potential Jurors 2 and 8 did not express an identical understanding of reasonable doubt. Accordingly, we conclude that the trial court's rejection of Childress's *Batson* claim was not clearly erroneous.

[12]    Affirmed.

Robb, J., and Bradford, J., concur.