IV. Sufficiency of the Evidence
[24] When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.
Drane v. State , 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted).
[25] Initially, we note that Richardson's claim regarding the sufficiency of *932 the evidence was based entirely on his claim that the trial court abused its discretion in admitting Exhibits 3, 6, and 7. However, given our conclusion that the trial court did not abuse its discretion in that regard, the jury could consider the Exhibits in determining that the State produced sufficient evidence to prove Richardson's guilt.
[26] In order to convict Richardson of Level 4 felony dealing in a narcotic drug, the State was required to prove that Richardson knowingly or intentionally delivered or possessed with the intent to deliver between one and five grams of heroin. Ind. Code § 35-48-4-1. The evidence establishes that Richardson possessed 4.29 grams of heroin, which he instructed Bain to hide when his vehicle was stopped by police. He also sold 3.0 grams of heroin to Burroughs. The evidence is sufficient to sustain Richardson's conviction.
[27] The judgment of the trial court is affirmed.
Tavitas, J., concurs.
Crone, J., concurs in part and concurs in result in part with opinion.
Crone, Judge, concurring in part and concurring in result in part.
[28] I fully concur as to issues II through IV, but I write separately to express my concerns regarding the Batson analysis in issue I.
[29] With respect to the first stage of the three-stage Batson process, I agree with my colleagues that "Richardson made a prima facie case that the State's peremptory challenge suggested an inference of discrimination because the potential juror was the only African-American member of the venire." Op. at 928.
[30] Once the defendant makes a prima facie showing, the burden then shifts to the State in the second stage to come forward with a race-neutral explanation for challenging a venireperson. In this case, the prosecutor gave the following reasons for striking the potential juror:
[W]e found [the potential juror] to be um, aggressive and dominant in the conversation um, in her answering she was always the first to speak out um, she's-was very um, in her language it was "I" uh, we're looking for a group so when we're analyzing juries we're looking for more of what we will decide. She had dominant body language and under our system of what we look for in life experience, in personality what is exhibited here in um, the kinds of t.v. shows that she enjoys, the kinds of reading um, and the kinds of hobby activities she fits into the category um, for us to strike and not want on the jury.
Tr. Vol. 1 at 76. At that point, the trial court did not make a specific finding that these reasons were race neutral.
[31] "At the third and last stage of a Batson inquiry, 'in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.' " Addison , 962 N.E.2d at 1209 (quoting Snyder v. Louisiana , 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) ). "Although the burden of persuasion on a Batson challenge rests with the party opposing the strike, the third step-determination of discrimination-is the 'duty' of the trial judge." Id. at 1210 (citation omitted). "The trial court evaluates the persuasiveness of the step two justification at the third step. It is then that 'implausible or fantastic justification may (and probably will) be found to be pretexts for purposeful discrimination.' " Id. (quoting Purkett , 514 U.S. at 768, 115 S.Ct. 1769 ). "The issue is whether the trial court finds the prosecutor's race-neutral explanation credible." Id. " '[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking *933 the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.' " Id. (quoting Miller-El v. Dretke , 545 U.S. 231, 251-52, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ). "Also, at the third stage, the defendant may offer additional evidence to demonstrate that the proffered justification was pretextual." Id.
[32] Here, Richardson apparently offered no additional evidence to demonstrate that the prosecutor's proffered justifications for striking the potential juror were pretextual. See Tr. Vol. 1 at 77 ("Judge, (inaudible) her ethnicity (inaudible) uh, State proper reason uh, I think um, I don't have any other (inaudible).").[2] And ultimately, the trial court found "that the reasons articulated by the [prosecutor were] appropriate reasons for striking [the potential juror] at [that] time." Id. (emphasis added). In this context, I presume that "appropriate" means both "race neutral" and "credible" for Batson purposes.[3]
[33] The prosecutor's reasons for striking the potential juror are race neutral on their face. But the transcript flatly contradicts the prosecutor's assertion that the potential juror was "aggressive and dominant in the conversation" and "was always the first to speak out." She spoke only when spoken to and succinctly answered the questions asked of her. Tr. Vol. 1 at 61-63, 68, 75. As for the potential juror's allegedly "dominant body language," i.e., demeanor, the trial court made no specific finding to support the prosecutor's assessment. We have acknowledged that U.S. Supreme Court precedent does not require "a trial court to make explicit findings every time the prosecution justifies a peremptory strike based on a juror's demeanor[,]" Blackmon , 47 N.E.3d at 1234, but making such findings is clearly the better practice in light of an appellate court's inability to judge a potential juror's demeanor, and I urge the Indiana Supreme Court to require such findings in Indiana trial courts to promote both fairness and judicial economy. Cf . Roach , 79 N.E.3d at 931-32 (remanding for determination regarding credibility of prosecutor's demeanor-based reason for striking juror, where second reason for striking juror was not supported by the record).
[34] Regarding the potential juror's media preferences, my colleagues state that a "potential juror's interest in law-related books and television shows has been found to be a permissible ground for the State's peremptory challenge." Op. at 929 (citing Farhane , 634 F.3d at 157-58, and Murillo , 288 F.3d at 1136 ). In Farhane , the prosecutor specifically argued that the potential juror's "frequent television viewing of the three 'CSI' television shows might make him reluctant to convict in the absence of scientific evidence." 634 F.3d at 157. Here, however, the prosecutor made no specific argument regarding the potential juror's choice of books and television shows. My colleagues merely speculate that the potential juror's "enjoyment of these mediums may have left her with an inaccurate understanding of criminal proceedings," Op. at 929, and overlook her apparent willingness to maintain an open mind and follow the law:
*934 [PROSECUTOR]: ... Uh, Ms. Smithson, what do you think beyond reasonable doubt is?
[POTENTIAL JUROR]: That you have sufficient evidence to convince us that your case is bigger than the other persons in that this person is guilty or what you (inaudible)
[PROSECUTOR]: Okay um, (inaudible) first part agree with that. There's one little place where I disagree. You will not be comparing cases (inaudible)
[POTENTIAL JUROR]: Oh.
[PROSECUTOR]: That's not how a criminal case works. (Inaudible) but a criminal case it's my burden to prove each of the elements of the crime charged. (Inaudible) and you have to deliberate, what would your verdict be?
[POTENTIAL JUROR]: Not guilty.
[PROSECUTOR]: Because there's not any evidence. You have to be convinced by the evidence and beyond a reasonable doubt (inaudible) but it's not beyond all doubt but it's a high burden.
Tr. Vol. 1 at 62-63. Although the transcript's quality is poor, one could reasonably infer that the prosecutor asked the potential juror what her verdict would be if she had to render one before any evidence was presented, and she correctly answered that she would have to find the defendant not guilty.
[35] In Murillo , the appellate court ruled that the potential juror's "statement that Judge Judy was her favorite TV show" was a "permissible ground[ ] for the prosecutor's peremptory challenge[,]" in that it "did not inherently suggest a discriminatory intent" and was "race-neutral." 288 F.3d at 1136. But the opinion does not say why the prosecutor found the potential juror's fondness for Judge Judy objectionable. Although a prosecutor's explanation for exercising a peremptory strike "need not rise to the level justifying exercise of a challenge for cause[,]" Batson , 476 U.S. at 97, 106 S.Ct. 1712, I believe that a prosecutor facing a Batson challenge should be required to offer some justification as to why a potential juror's media preferences could affect that person's fitness to be a juror. Otherwise, we risk allowing such preferences to become shorthand, Batson -proof bases for exercising peremptory strikes (e.g., anyone who likes to watch Judge Judy is unfit to be a juror). See Minetos v. City Univ. of N.Y. , 925 F.Supp. 177, 184-85 (S.D.N.Y. 1996) ("Subjective reasons offered by counsel to justify peremptory challenges (such as the juror's hairstyle, bad facial expression, body language, or over-responsiveness to opposing counsel) will be evaluated by the trial court and the peremptory challenge will be sustained if the trial court confirms there is a sound and credible basis for it. Of course, listing in this manner has the unfortunate effect of creating a how-to guide for defeating Batson challenges. Such guidelines do not ensure that juror strikes are not racially motivated-only that advocates are on notice of which reasons will best survive judicial review.") (footnote omitted).[4]
[36] All that being said, absent any existing requirement for trial courts to make findings regarding a potential juror's demeanor or for prosecutors to offer some justification for striking a potential juror based on his or her media preferences, I must reluctantly defer to the trial court, who was uniquely situated to assess the potential juror's allegedly "dominant body language" and determine the credibility of the prosecutor's objection to her choice of books and television shows. My reluctance *935 is heightened by the lack of evidence supporting the prosecutor's assertion that the potential juror was "aggressive and dominant in the conversation," but in the end I must conclude that Richardson has failed to establish that the trial court clearly erred in denying his Batson challenge. Accordingly, I concur in result as to issue I.

As this excerpt suggests, the quality of the voir dire transcript leaves much to be desired. Cf . Childress v. State , 96 N.E.3d 632, 636-37 (Ind. Ct. App. 2018) (noting "significant deficiencies in the transcript" of voir dire proceedings in addressing appellant's Batson argument).

I do not share Richardson's concern that the trial court conflated the second and third stages of the Batson process. We presume that a trial court knows and follows the applicable law. Tharpe v. State , 955 N.E.2d 836, 842 (Ind. Ct. App. 2011), trans. denied .

The district judge in Minetos echoed Justice Thurgood Marshall's call in his concurring opinion in Batson to end "peremptory challenges and the racial discrimination they perpetuate." 925 F.Supp. at 185.