## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 15 2020, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and Cass County
Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darrell Cortez Williams Wright, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | January 15, 2020 <br><br> Court of Appeals Case No. 19A-CR-1646 <br><br> Appeal from the Cass Superior Court <br><br> The Honorable Richard A. Maughmer, Judge <br><br> Trial Court Cause No. 09D02-1803-F2-5 |

**Bradford, Chief Judge.**

# Case Summary

In May of 2019, Darrell Cortez Williams Wright was tried by jury on six felony charges. During *voir dire*, the State used a peremptory strike on the only African-American individual in the venire. Wright raised a *Batson* challenge, which was overruled by the trial court. At the conclusion of the trial, Wright was found guilty as charged. In June of 2018, the trial court sentenced Wright to an aggregate sentence of thirty-seven years. Wright contends that the trial court erroneously overruled his *Batson* challenge. Wright also contends that the aggregate thirty-five-year sentence for two of his felony convictions, which were ordered to be served consecutively, should have been capped at thirty-two years. Because we agree only with Wright's challenge to his sentence, we affirm in part, reverse in part, and remand with instructions consistent with this memorandum decision.

# Facts and Procedural History

On March 5, 2018, the State charged Wright with Level 2 felony narcotic drug dealing, Level 3 felony narcotic drug possession, Level 3 felony cocaine dealing, Level 5 felony cocaine possession, Level 6 felony resisting law enforcement, Level 6 felony obstruction of justice, and Level 6 felony maintaining a common nuisance. On May 14, 2019, the State dismissed the maintaining-a-common-nuisance charge. A jury trial was held on May 15 and 16, 2019. *Voir dire* was conducted, during which both the State and Wright had the opportunity to question the members of the venire. The trial court's *voir dire*

procedure was to place twenty-one individuals in the jury box for each round of questioning until there were ultimately thirteen jurors selected. The individuals were placed in the jury box in sequential order based on a number assigned to them. After the last round of questioning, the State used a peremptory strike on Mr. Sullivan, the only African-American individual then in the jury box, causing Wright to make a *Batson* challenge. The State responded with race-neutral reasons for the strike by stating that Sullivan worked nights and appeared tired and slumped over, spoke softly, and was unable to remember his past jury service, all of which led the State to believe that Sullivan would not adequately participate as a juror. The trial court overruled Wright's *Batson* challenge, concluding that it was moot. In concluding such, the trial court noted that Sullivan was potential juror number forty-six, and all thirteen jurors had been selected from the first forty-one potential jurors. The trial court also noted that Blickenstaff, Baker, and Moss, who were also excused from the jury box because the thirteen jurors had already been selected, were sequentially before Sullivan. At the conclusion of the trial, Wright was found guilty as charged.

[3]     On June 18, 2019, the trial court merged the dealing and possession convictions and sentenced Wright to twenty-six years for Count I–Level 2 felony narcotic drug dealing, nine years for Count III–Level 3 felony cocaine dealing, two years for Count V–Level 6 felony resisting law enforcement, and two years for Count VI–Level 6 felony obstruction of justice. The trial court order all Counts to be

served consecutively, except for Counts V and VI, which were ordered to be served concurrently.

# Discussion and Decision

Wright contends that the trial court erred by concluding that his *Batson* challenge was moot. Wright also contends that the aggregate sentence for his two dealing convictions should have been capped at thirty-two years.

## I. *Batson* Challenge

Wright contends that the trial court erroneously overruled his *Batson* challenge by concluding that it was moot rather than ruling on the merits. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). "The exclusion of even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause." *Richardson v. State*, 122 N.E.3d 923, 927 (Ind. Ct. App. 2019) (citation omitted), *trans. denied*. "A defendant's race-based *Batson* claim involves a three-step process." *Id*. The first step requires the party objecting to the peremptory challenge to establish a prima facie case of discrimination. *Ashabraner v. Bower*, 753 N.E.2d 662, 664 (Ind. 2001). To do so, the objecting party must show that "(1) the juror is a member of a cognizable racial group; (2) [the challenging party] has exercised peremptory challenge to remove that group's members from the jury; and (3)

the facts and circumstances of this case raise an inference that the exclusion was based on race." *Id*. (brackets in the original).

[6] Here, we conclude that the trial court correctly concluded that Wright's *Batson* challenge was moot. "Mootness arises when the primary issue within the case has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved." *C.J. v. State*, 74 N.E.3d 572, 576 (Ind. Ct. App. 2017) (internal quotations omitted), *trans. denied*. Because the jury had already been formed by thirteen individuals, the State's peremptory strike of Sullivan and Wright's subsequent *Batson* challenge were unnecessary and moot. Due to Sullivan being potential juror number forty-six and the fact that the jury was selected from the first forty-one potential jurors, Sullivan was never going to be a member of the jury.

[7] We acknowledge that the trial court's *voir dire* procedure is problematic, in that it significantly effects counsels' strategy for using peremptory strikes. Counsel should not have to make strikes prematurely or spend strikes on pure speculation. Moreover, by seating twenty-one individuals in the jury box when only thirteen jurors are needed, a situation can arise where an individual in the jury box will be questioned and peremptorily struck by a party even though it turns out that the individual had no chance of being selected as a member of the jury. That is exactly what happened in this matter. Sullivan was one of the twenty-one individuals seated in the jury box, who were questioned by the parties, the State peremptorily struck Sullivan, and Wright raised a *Batson* challenge; however, all of this in regards to Sullivan was unnecessary because

the thirteen-person jury had been selected from the first forty-one individuals that came before Sullivan. Put another way, the State's strike of Sullivan did not have the effect of excluding him from the jury, just as a strike would not have effected Blickenstaff, Baker, and Moss, who were also in the jury box with Sullivan, or the potential jurors who sat in the gallery waiting to potentially be seated in the jury box, all of whom were excused once a jury was formed from the first forty-one potential jurors. Thus, once the jury had been formed from the first forty-one potential jurors, the State's peremptory challenge and Wright's *Batson* challenge were rendered moot.

## II. Sentence

[8] Wright also contends and the State agrees that the aggregate sentence for Wright's two dealing convictions should have been capped at thirty-two years. Wright was convicted of Level 2 felony narcotic drug dealing and Level 3 felony cocaine dealing, which when ordered to be served consecutively amounted to an aggregate sentence of thirty-five years. Indiana Code subsection 35-50-1-2(d)(5) provides that

> (d) Except as provided in subsection (c), the total consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct may not exceed the following:
>
> > (5) If the most serious crime for which the defendant is sentenced is a Level 2 felony, the total of the consecutive terms of imprisonment may not exceed thirty-two (32) years.

We agree with both parties that Wright's two dealing convictions arose out of an episode of criminal conduct and therefore conclude that the aggregate of the two consecutive sentences must be capped at thirty-two years. We remand this matter to the trial court with instructions for it to cap Wright's aggregate sentence for his dealing convictions to thirty-two years, for a total aggregate sentence of thirty-four years.

[9] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

Robb, J., and Altice, J., concur.